# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHYLLIS DRUMMOND, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. No. 07-58-SLR |
| | ) |
| PATRICK RYAN, | ) |
| Warden, and ATTORNEY | ) |
| GENERAL OF THE STATE | ) |
| OF DELAWARE | ) |
| | ) |
| Respondents. | ) |

Phyllis Drummond. Pro se petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

## MEMORANDUM OPINION[1]

August  $\mathcal{H}$  , 2008
Wilmington, Delaware

---

[1]This case was re-assigned from the Vacant Judgeship to the undersigned on February 1, 2008.

ROBINSON, District Judge

## I. INTRODUCTION

Presently before the court is petitioner Phyllis Drummond's ("petitioner")

application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 1; D.I. 8)

Petitioner is a Delaware inmate in custody at the Delores J. Baylor's Correctional

Institution in New Castle, Delaware. For the reasons that follow, the court will dismiss

her application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As explained by the Delaware Supreme Court in petitioner's direct appeal,

> [o]n November 22, 2003, a Wilmington Trust Bank located in Millsboro
> was robbed. Darlene Hayes, a bank employee, was approached by a person
> she thought to be a short black male. The suspect was carrying a gun and
> wearing plastic gloves, a blue and white plaid jacket and a baseball cap. Hayes'
> coworkers observed the perpetrator flee in what they believed to be a green
> Toyota Camry. Later in the day a surveillance tape of the robbery was broadcast
> on television. Sheila Hicks, [petitioner's] sister, saw the tape and told her
> coworker, Charlotte Ponson, that the robber appeared to be [petitioner]. Ponson
> later called the police and told them about her conversation with Hicks. Victor
> Frye also identified [petitioner] as the robber from the broadcast.
>
> On November 24, 2003, the police arrived at [petitioner's] residence.
> They obtained written consent from Percy Giddens, [petitioner's] boyfriend and
> the lessor of the residence, to search the premises. Before searching Giddens
> and [petitioner's] shared bedroom, the police obtained written consent from
> [petitioner]. The police recovered a blue and white plaid jacket, a blue baseball
> cap and a BB gun that was a replica of a semi-automatic pistol. [Petitioner] was
> then taken to the police station where she confessed to the crime. [Petitioner's]
> son also told the police that she had committed the robbery.

Drummond v. State, 2005 WL 2475715 (Del. Aug. 24, 2005).

In October 2004, a Delaware Superior Court jury convicted petitioner of first

degree robbery and wearing a disguise during the commission of a felony. The

Delaware Superior Court sentenced petitioner to twenty-one years of incarceration,

suspended after fifteen years for decreasing levels of supervision. Petitioner appealed, and the Delaware Supreme Court affirmed her convictions and sentence. Drummond, 2005 WL 2475715.

Petitioner filed a motion for reduction of sentence in October 2005, which the Superior Court denied. In March 2006, petitioner filed a motion for post-conviction relief under Delaware Superior Court Criminal Rule 61. The Superior Court denied the Rule 61 motion in May 2006, and petitioner did not appeal that decision. See State v. Drummond, 2006WL 1579802 (Del. Super. Ct. May 24, 2006). Instead, she filed two more Rule 61 motions. The Superior Court denied both motions, and petitioner did not appeal either decision. See State v. Drummond, 2006 WL 3094182 (Del. Super. Ct. Oct. 26, 2006); State v. Drummond, 2007 WL 475297 (Del. Super. Ct. Feb. 12, 2007).

Petitioner filed her habeas application in January 2007, and she filed an amended application in February 2008. (D.I. 1; D.I. 8) The State filed its answer in July 2007. (D.I. 15)

## III. EXHAUSTION AND PROCEDURAL DEFAULT

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by "fairly presenting" the

2

substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider it on the merits. See Duncan v. Henry, 513 U.S. 364, 365 (1995); Castille v. Peoples, 489 U.S. 346, 351 (1989); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). If the petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Harris v. Reed, 489 U.S. 255, 260-64 (1989).

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51; Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, the petitioner must show that the errors during his trial worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 494.

Alternatively, if the petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," Murray, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in

3

order to prevent a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998); Murray, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. Hubbard v. Pinchak, 378 F.3d 333, 339-40 (3d Cir. 2004).

## IV. DISCUSSION

Petitioner's timely filed application presents the following five claims for relief: (1) petitioner's confession was involuntary and should have been suppressed because the police detective questioned her for more than two hours and informed petitioner that her statement did not constitute a confession; (2) the police violated petitioner's Fourth Amendment rights by searching her residence without probable cause; (3) the evidence presented at trial was insufficient to sustain petitioner's convictions; (4) defense counsel provided ineffective assistance during petitioner's trial by failing to object to police perjury and to the admission of photographs, by failing to impeach interview and impeach witnesses, by failing to move for a mistrial, and by failing to suppress the admission of petitioner's prior record; and (5) defense counsel provided ineffective assistance on direct appeal by failing to raise a claim of insufficient evidence and by failing to raise the issue of the invalid consent form. The State contends that the court should deny claims one, four, and five as procedurally barred, claim two as

4

failing to present an issue cognizable on federal habeas review, and claim three as failing to warrant relief under § 2254(d)(1). (D.I. 15)

## A. Claims one, four, and five are procedurally barred

The record reveals that petitioner did not present her involuntary confession claim (claim one) to the Delaware Supreme Court on direct appeal.[2] To the extent petitioner raised her two ineffective assistance of counsel claims (claims four and five) to the Delaware Superior Court in her second and third Rule 61 motions, petitioner did not appeal the Superior Court's denial of these claims. Thus, petitioner has not exhausted state remedies for claims one, four, and five.

At this juncture, Delaware court rules would bar petitioner from obtaining further review of the three claims in the Delaware State Courts. For example, Delaware Supreme Court Rule 6 would preclude petitioner from appealing the Superior Court's denial of her Rule 61 motions because the 30-day time period allowed for filing a timely notice of appeal has long since expired. Additionally, Delaware Superior Court Criminal Rules 61(i)(2) and 61(i)(3) would bar petitioner from presenting claims one, four, and five to the Delaware state courts in a new Rule 61 motion, thereby precluding petitioner from obtaining review of the claims in any subsequent appeal to the Delaware Supreme Court. See Lawrie v. Snyder, 9 F. Supp. 2d 428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding); Bright v. Snyder, 218

---

[2]On direct appeal, petitioner argued that her confession should have been suppressed because the police lacked probable cause to arrest her, thereby rendering her confession the fruit of an illegal detention. Petitioner, however, did not raise the voluntariness of her confession as an issue on direct appeal. Therefore, claim one is unexhausted because petitioner did not "fairly present" the claim to the Delaware Supreme Court.

5

F. Supp. 2d 573, 580 (D. Del. 2002)(Rule 61(i)(3) would bar the Superior Court from considering the claim because petitioner did not raise the claim in the proceedings leading to his conviction).

In this situation, the court must excuse petitioner's failure to exhaust state remedies for claims one, four, and five. Nevertheless, the claims are still procedurally defaulted and, therefore, the court cannot review their merits absent a showing of cause and prejudice, or that a miscarriage of justice will occur absent such review.

Petitioner does not allege any cause for her failure to present claims four and five to the Delaware Supreme Court on post-conviction appeal. Although petitioner does attempt to establish cause for her default of claim one by blaming counsel for not raising the involuntary confession issue on direct appeal, as just explained, this allegation of ineffective assistance (claim five) is itself procedurally defaulted. As a result, counsel's performance cannot constitute cause for petitioner's default of claim one. See Edwards v. Carpenter, 529 U.S. 446, 451-54 (2000). Moreover, to the extent that petitioner attempts to establish cause for her default of claim one, based on her allegations that the police and other unidentified state officials lied to her, the court rejects this unsupported argument. See (D.I. 8, at ¶ 8)

Given petitioner's failure to establish cause for her default of claims one, four, and five, the court does not need to address the issue of prejudice. Moreover, the miscarriage of justice exception to the procedural default doctrine does not excuse petitioner's default because she has not provided new reliable evidence of her actual innocence. Accordingly, the court will dismiss claims one, four, and five as procedurally barred.

6

## B. Claim two is barred by Stone

In her second claim, petitioner contends that the police violated her Fourth Amendment rights because they lacked probable cause to search her apartment and seize the items found inside. Petitioner also contends that the consent form she signed permitting the search of her bedroom should be viewed as invalid because the form contains erroneous information. Therefore, petitioner argues that her statement to the police and the items seized as a result of the police search were improperly adrnitted as evidence during her trial.

Pursuant to Stone v. Powell, 428 U.S. 465, 494 (1976), a federal court cannot provide habeas review of a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state courts. See also Wright v. West, 505 U.S. 277, 293 (1992). The "full and fair" hearing requirement is satisfied if the state courts provided the petitioner with a pre-trial suppression hearing and the Fourth Amendment claim was considered on appeal. See United States ex rel. Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978); United States ex rel. Petillo v. New Jersey, 562 F.2d 903, 906-07 (3d Cir. 1977). In the Third Circuit, a petitioner can avoid the Stone bar only by demonstrating that the state system contains a structural defect that prevented full and fair litigation of the Fourth Amendment claim; "[a]n erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [Stone] bar." Marshall v. Hendricks, 307 F.3d 36, 82 (3d Cir. 2002).

After reviewing the record, the court concludes that petitioner had a full and fair opportunity to litigate her Fourth Amendment claim in the state courts. Petitioner filed a pre-trial motion to suppress the items seized and her statement to the police on the

7

grounds that the police lacked probable cause to arrest her, that her detention

exceeded the two-hour limit, and that her waiver of Miranda rights was involuntary.

(D.I. 22, State's Ans. Br. in Drummond v. State, No.530,2004, at p. 7) . The Superior

Court denied the motion after conducting a hearing. Id. On direct appeal, petitioner

asserted that the Superior Court erred in denying her suppression motion, once again

arguing that the search and seizure conducted by police violated her Fourth

Amendment rights. The Delaware Supreme Court denied the claim as meritless,

explicitly holding that the police possessed probable cause to search the apartment

because petitioner matched the physical description given by the bank teller, and also

because petitioner's sister and another person who knew petitioner identified petitioner

as the robber after viewing the surveillance tape on television. Accordingly, the court

will deny claim two as barred by Stone.[3]

## C. Claim three does not warrant relief under § 2254(d)(1)

In claim three, petitioner asserts that the evidence presented at trial was legally

insufficient to support her conviction for robbery because she did not resemble the

description of the robbery suspect provided by the bank teller, and because her car did

not resemble the description of the getaway vehicle provided by the eyewitnesses to

the crime. For example, petitioner notes that the clothes worn by the robber were

described as being either navy blue or black, the getaway car was described as a two-

_____

[3]Even if the Superior Court improperly denied petitioner's suppression motion,
petitioner still had a "full and fair opportunity to litigate" her Fourth Amendment claim.
See, e.g., Marshall v. Hendricks, 307 F.3d 36, 82 (3d Cir. 2002)(holding that "[a]n
erroneous or summary resolution by a state court of a Fourth Amendment claim does
not overcome the [Stone] bar.") ; Gilmore v. Marks, 799 F.2d 51, 56 (3d Cir. 1986),
cert. denied, 479 U.S. 1041 (1987).

8

door teal green Toyota Camry, the gun was described as a small black automatic with

two holes, and the robber was described as a black male approximately 5 feet 2 inches

to 5 feet 4 inches tall, 130-140 pounds, with a thick mustache. However, the clothing

seized from petitioner's residence was blue and white with red stripes, her car was a

four-door forest green Subaru Impreza, the gun seized from her residence was a silver

and black BB gun with one hole, and she is a 114 pound, four foot eleven inch tall

woman, without any trace of facial hair.

Petitioner presented this claim to the Delaware Supreme Court during her direct

appeal when she challenged the Superior Court's denial of her motion for judgment of

acquittal. The Delaware Supreme Court concluded that the Superior Court properly

denied petitioner's motion for judgment of acquittal, because,

> [a]s the trial court noted in its denial of the [petitioner's] motion for acquittal,
> [petitioner] confessed to the crime, [petitioner's] son said she committed the
> crime, her sister and another person identified her as the robber and
> [petitioner's] hat, coat and BB gun [found in her residence] were consistent with
> what the bank teller saw.

Drummond, 2005 WL 2475715, at *2.

Given the Delaware Supreme Court's adjudication of the instant claim, the court

must review the claim under § 2254(d)(1) to determine if the Delaware Supreme

Court's decision was either contrary to, or an unreasonable application of, clearly

established Federal law. The clearly established Federal law applicable to insufficient

evidence claims is the rule articulated by the United States Supreme Court in Jackson

v. Virginia, 443 U.S. 307 (1979). Pursuant to Jackson, a court must determine

"whether, after reviewing the evidence in the light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime beyond a

9

reasonable doubt." Id. at 319. The Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16. Further, "a federal habeas court faced with a record of historical facts that supports conflicting interests must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326.

Although the Delaware Supreme Court did not specifically cite to Jackson when deciding petitioner's direct appeal, the State Supreme Court reviewed the Superior Court's denial of the motion for judgment of acquittal de novo in order "to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find [petitioner] guilty beyond a reasonable doubt of all elements of the crime." Drummond, 2005 WL 2475715, at *2. The standard annunciated by the Delaware Supreme Court comports with the Jackson standard. Thus, the court concludes that the Delaware Supreme Court's decision was not contrary to clearly established federal law. See Williams, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

Turning to the "unreasonable application" portion of the 2254(d)(1) inquiry, the court notes that a reviewing court must presume that a jury resolved any inconsistencies or conflicts in the evidence in favor of the prosecution; reviewing courts cannot make their own credibility determinations in evaluating the sufficiency of the evidence. See Jackson, 443 U.S. at 326; Government of Virgin Islands v. Isaac, 50 F.3d 1175, 1179 (3d Cir. 1995). Moreover, petitioner's habeas argument regarding the

inconsistencies between the evidence seized and the eyewitness accounts does not add anything new to the argument she presented to the Delaware Supreme Court during her direct appeal. In this case, petitioner's sister identified petitioner as the robber, petitioner's own son stated that she committed the robbery, and petitioner actually confessed. This evidence alone provided a sufficient basis for the jury to conclude that petitioner was the person who committed the robbery, even given the discrepancies in the description of the getaway vehicle and the other pieces of evidence, as well as the fact that the bank teller initially described the robber as a male. Thus, viewing all of the evidence in a light most favorable to the State, the court concludes that the Delaware Supreme Court's denial of petitioner's insufficient evidence claim constituted a reasonable application of Jackson. Accordingly, the court will deny claim three for failing to satisfy the standard of § 2254(d)(1).

## D. Motion for summary judgment

Petitioner filed a motion for summary judgment during the pendency of this proceeding, arguing that she is entitled to habeas relief because she was tried by an all white jury. (D.I. 25) The court construes the motion as a request to add a new claim to petitioner's application. However, although petitioner timely filed her original § 2254 application, AEDPA's one-year limitations period expired prior to July 7, 2008, the date on which petitioner filed her motion for summary judgment. Therefore, the court concludes that it cannot review the new "all white" jury claim because it does not relate back to the date of petitioner's original habeas application. Fed. R. Civ. P. 15(a),(c); See Mayle v. Felix, 545 U.S. 644 (2005); U.S. v. Thomas, 221 F.3d 430, (3d Cir. 2000)("Under Fed. R. Civ. P. 15(c), an amendment . . . clarif[ying] or amplif[ying] a

11

claim or theory in the petition may, in the District Court's discretion, relate back to the date of the petition if and only if the petition was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case"). Accordingly, the court will deny petitioner's motion.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. See Third Circuit Local Appellate Rule 22.2.  The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  Slack, 529 U.S. at 484.

For the reasons stated above, the court concludes that petitioner's habeas application must be denied.  Reasonable jurists would not find this conclusion debatable.  Consequently, a certificate of appealability will not be issued.

## VI. CONCLUSION

For foregoing reasons, the court will deny petitioner's application for habeas

12

relief filed pursuant to 28 U.S.C. § 2254.

     An appropriate order will be entered.